IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| DAVID L. CHAUSSEE and PENNY L. CHAUSSEE, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 160017C |
| v. | ) ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **FINAL DECISION** |

Magistrate Dan Robinson wrote and signed the Decision in this matter, entered August 16, 2016. This Final Decision incorporates that Decision without change. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Plaintiffs appeal Defendant's disqualification of 5.59 acres of land that is part of Account R587656 (subject property) from forestland special assessment for the 2016-17 tax year. Defendant notified Plaintiff of the subject property's disqualification in a letter dated October 15, 2015, (disqualification letter). A trial was held by telephone on May 2, 2016. Dale R. Burkholder, Oregon Licensed real estate broker, appeared on behalf of Plaintiffs. Penny L. Chaussee (Chaussee) testified on behalf of Plaintiffs. Jeff Brown and Karla Hartenberger (Hartenberger), real estate appraisers, appeared on behalf of Defendant. John James (James), real estate appraiser and farm/forest appraiser, Mary Holliman (Holliman), program specialist for farm/forest program, and Hartenberger testified on behalf of Defendant. Plaintiffs' Exhibits 1, 2, and 5 were received without objection. Defendant's Exhibits A to J were received without objection.

/ / /

FINAL DECISION TC-MD 160017C 1

## I.  STATEMENT OF FACTS

According to the testimony and deed submitted into evidence, Plaintiffs purchased the subject property on January 28, 2014.  (Ptfs' Ex 1 at 2-3; Def's Ex F at 1.)  At the time of the purchase, Plaintiffs were living in California.  (Def's Ex G at 1; Compl at 2.)  Chaussee testified that Plaintiffs moved from California into the subject property in Oregon in November 2015 and that between the time of their purchase and their move to Oregon, their daughter Kimberly, who lived near the subject property, checked on the property on a weekly basis.  The parties agreed that when Plaintiffs purchased the property 5.59 acres were under special assessment as designated forestland.  The property is improved with a 4,200 square foot two-story residence. (Def's Ex I at 1.)  The total lot size is 6.67 acres.  (*Id*.)

Chaussee testified that James, one of the assessor's appraisers, visited the subject property and left his business card on the gate at the beginning of the driveway leading to the property because no one was home.  Kimberly found the card on the gate.  James testified that he visited the property on August 5, 2015, and left his business card on Plaintiffs' gate.  Chaussee testified that Kimberly called James after finding his business card.  James testified on direct examination that he did not recall receiving a call from Kimberly.  James also testified that the property (land and home) is not visible from the gate because the lot is on a hill and there is shrubbery and decorative trees at the entrance, just inside the gate, blocking any view of the property.  Defendant submitted a photograph that tends to confirm that testimony.  (Def's Ex J at 1.)  James testified that because he could not see most of the property, or the home, he could not tell whether there were enough trees to meet the minimum stocking requirements for forestland special assessment purposes, or whether any trees had been cut.

/ / /

The parties agreed that Defendant sent Plaintiffs a letter dated August 18, 2015, that included a one-page questionnaire (questionnaire) with five questions. That letter stated that Plaintiffs had "recently acquired property that is currently in the Designated Forestland Special Assessment Program [because] [t]he former owner applied for and was granted this special assessment based upon their application and management plan." (Ptfs' Ex 2 at 1; Def's Ex A at 1.) That letter requested that Plaintiffs "complete the enclosed questionnaire and return [it] to [the assessor's] office within 15 business days of the date of th[e] letter" so that Defendant could "determine whether or not the property continue[d] to qualify for th[e] deferral." (*Id.*) Additionally, the letter stated that "[f]ailure to return the questionnaire will result in the property being disqualified." (*Id.*) Holliman testified that the letter and questionnaire were mailed to Plaintiffs twice and that each time the letter included an information circular explaining Oregon's special assessment programs for forestland. Plaintiffs included the questionnaire with their exhibits, but did not include a copy of the information circular. (Ptfs' Ex 2 at 2.) Defendant included that circular, along with the questionnaire, in its exhibits. (Def's Ex C at 1-4.)

That questionnaire included five questions:

1. "Are you currently growing a marketable species of tree? ___Yes ___ No
   If not, why not?"
2. "What species of trees are you growing and about how old are the trees?"
3. "Is the predominate purpose of your land to grow and harvest trees of a marketable species? ___ Yes ___ No"
4. "When will the trees be harvested?"
5. "Have you filed a forest management plan with the United States Department of Forestry? ___ Yes ___ No
   If yes, please attach a copy.
   If no, please describe what your management plan is for the property."

(Ptfs' Ex 2 at 2; Def's Ex B at 1.)

/ / /

Chaussee testified that Kimberly mailed the August 18, 2015, letter and questionnaire to her. Penny Chausee signed that questionnaire. (*Id.*) Questions 1, 3, and 5 of the questionnaire were each marked as "No." (*Id.*) Question 2 was answered "unknown." (*Id.*) Question 4 was answered "N/A." (*Id.*) Question 5 also contained the answer "N/A" next to the questions about a forest management plan. (*Id.*) Chaussee testified that on August 28, 2015, she mailed the questionnaire, together with the August 18, 2015, letter back to Defendant.

Chaussee testified that the questionnaire was filled out incorrectly, and that she thought Plaintiffs needed to be growing *and* cutting trees in order to answer "Yes" to question number one. She testified that Plaintiffs' intent is to continue the deferral and market the trees on the property. Chaussee also testified that the property is only useful for growing trees and that the property is in fact growing cedar, maple, and alder. Chaussee did not elaborate as to why the subject property, a 6.67 acre lot with a 4,200 square foot home, was only useful for growing trees. It is located in a residential area and the listing describes the property as a "[s]tunning home on 6.67 private acres. Gated entry, walking trails w/ views of Columbia River." (Def's Ex I and 1.)

Chaussee testified on cross-examination that there was no forest management plan in place, and that they did not know they needed one. Chaussee also testified on cross-examination that Plaintiffs did not apply for a forestland deferral for tax year 2016-17 because she thought that she was doing so through the court appeal. At trial, Chaussee changed some of her answers on the questionnaire. To question 1 "[A]re you currently growing a marketable species of trees?" Chaussee testified "yes". To question 2 "[w]hat species of trees are you growing?" Chausee changed her answer from "unknown" to "cedar, maple, and alder." To question (3)

/ / /

"[i]s the predominate purpose of your land to grow and harvest trees of marketable species?" Chaussee changed her answer from "No" to "Yes."

James testified that the decision to disqualify the subject property was based on Plaintiffs' answers to the questionnaire. Hartenberger also testified that disqualification was appropriate based upon answers to the questionnaire. Hartenberger testified that the questionnaire is important because when forestland sells the seller may have harvested the trees. Hartenberger further testified that she reviews all forestland grants and disqualifications and that disqualification seemed appropriate in this case, particularly because of Plaintiffs' responses to questions of 1, 3, and 4.

## II. ANALYSIS

A. *Issue Presented*

Plaintiffs have requested that the court reinstate the forestland special assessment for the subject property for the 2016-17 tax year. The issue, therefore, is whether the subject property qualifies for forestland special assessment under ORS 321.358.[1] For the reasons set forth below, the court concludes that Plaintiffs did not prove, by a preponderance of the evidence, that the property does qualify for forestland special assessment.

B. *Burden of Proof*

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). This court has stated that the

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

preponderance standard "mean[s] more likely than not." *Parker v. Dept. of Rev.,* TC-MD 101057C, WL 4763133 at *7 (Oct 8, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). As the party seeking affirmative relief, Plaintiffs bear the burden of proof.

C.      *Timing of Questionnaire*

Plaintiffs claim that an informational circular, explaining Oregon's special assessment programs for forestland, was not included with the letter and questionnaire. Holliman testified, however, that the letter and questionnaire were mailed to Plaintiffs twice and that each time the letter included an informational circular. The evidence on that point is in conflict. However, there is no statutory requirement that Defendant include the circular with the letter and questionnaire. The court, therefore, does not need to decide whether Defendant mailed the information circular, or whether Plaintiffs received it.

Plaintiffs also argue that the fifteen business days is not enough time to complete the enclosed questionnaire and return it to Defendant. It is not for the court to determine policy issues regarding whether 15 days is sufficient. However, Plaintiffs did meet the 15-day deadline. Moreover, neither the statutes nor administrative rules require the assessor to send a questionnaire. ORS 308A.718(3) merely requires the assessor to send notice of disqualification to the taxpayer "[w]ithin 30 days *after* the date that land is disqualified." (Emphasis added.) The corresponding administrative rule reiterates that requirement. OAR 150-308A.718(1)(a). The court finds that Plaintiffs' argument with regard to the timing of the questionnaire is without merit.

/ / /

D.      *Whether Defendant Properly Disqualified the Subject Property from Forestland Special Assessment*

The relevant statutes provide the following: "When land has once been designated as forestland * * * it shall be valued as such until the assessor removes the forestland designation * * *." ORS 321.359(1)(a). "The county assessor shall remove the forestland designation upon * * * [d]iscovery by the assessor that the land is no longer forestland[.]" ORS 321.359(1)(b), (b)(C). "'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species * * *." ORS 321.257(2).

The subject property retained its forestland designation from the time the property was designated forestland under previous ownership until the time that Defendant removed that designation based on Plaintiffs' answers to the questionnaire. Defendant's disqualification was based on Plaintiffs' answers to the questionnaire, indicating that Plaintiffs were not growing marketable species of trees on the land and that the Plaintiffs' predominate purpose with regard to the land was not to grow and harvest trees of a marketable species.

Chaussee testified that she made mistakes when filling out the questionnaire, mistakes she wanted to correct through her trial testimony. During her testimony, Chaussee changed some of her answers to the questionnaire. Chaussee testified that she wanted to change her answer for question (1): "[a]re you currently growing a marketable species of tree?" from "No" to "Yes." She explained that when she answered the questionnaire that she thought they needed to be growing and cutting trees in order to select "Yes" in answer to question number one. The court, however, does not see any ambiguity or confusion in question one. The question does not ask about cutting trees, only growing trees.

Chaussee also changed her answer for question (2): "[w]hat species of trees are you

growing and about how old are the trees?" from "unknown" to "cedar, maple, and alder." When

Plaintiffs purchased the property they were living in California. They more than likely visited

the property before the purchased it, although there is no evidence on that point. But if they were

looking for a nice home with a serene environment, a particular species of trees would not have

been important to Plaintiffs. That may be why they indicated on the questionnaire that they did

not know the type of trees growing on the property at the time they filled out the questionnaire.

In any event, the question was answered in the negative and the court has only Chaussee's

uncorroborated testimony that a marketable species of tree is being grown on the 5.59 acres.

Pictures of the trees or other third-party verification would have bolstered the testimony and

perhaps persuaded the court.

Chaussee also changed her answer to question (3): "[i]s the predominate purpose of your

land to grow and harvest trees of a marketable species?" from "No" to "Yes." In further support

of that answer, Chaussee testified that Plaintiffs' intent was to market the trees on the property

and to continue the tax deferral. She testified that the property is only useful for growing trees.

The court is not persuaded that the property is only useful for growing trees. The home is

located on the hill with a view of the Columbia River, and walking trails. The property is useful

for residential purposes, with enough acreage and privacy to provide a buffer from neighboring

property owners, and afford the owner's nice views and pleasant walks through the woods.

Chaussee did not claim a mistake on her answers to questions four or five. Question (4)

asks when the trees will be harvested. Plaintiffs answered that question "N/A." Harvesting trees

is one of the requirements for forestland special assessment. ORS 321.257(2) (" 'Forestland'

means land * * * held or used for the predominant purpose of growing *and harvesting* trees of a

marketable species.") (Emphasis added.) Chaussee's testimony, standing alone, might be

sufficient to show Plaintiffs' intent was that the subject property be "held or used for the predominant purpose of growing and harvesting trees of a marketable species" as required by ORS 321.257(2). However, her testimony conflicts with her own prior statements and Plaintiffs did not provide any further evidence at trial to corroborate the self-serving testimony that the subject property "[wa]s being held or used for the predominant purpose of growing and harvesting trees of a marketable species"

Plaintiffs have the burden of proving their case by "a preponderance of the evidence." ORS 305.427. Chaussee's testimony is insufficient to overcome Plaintiffs' written answers to the questionnaire, the lack of corroboration about the type(s) of trees being grown, and Plaintiffs' admission that they have no intent to harvest the trees, as required by ORS 321.257(2). The court was not persuaded by Chaussee's testimony. Had Plaintiffs shown some independent proof of the existence a marketable species of trees and proof of their intent to harvest those trees, they might have met their burden of proof. A forest management plan would have proved helpful, had Plaintiffs had one. The facts before the court, however, do not persuade the court that Plaintiffs predominant purpose was growing and harvesting trees of a marketable species.

III. CONCLUSION

After careful consideration, the court concludes Plaintiffs have failed to meet their burden of proof. Plaintiffs did not provide sufficient evidence to persuade the court that the subject property qualifies for the western Oregon forestland special assessment program under ORS 321.257(2) because Plaintiffs failed to show that the predominant purpose of the 5.59 acres was the growing and harvesting trees of a marketable species. Accordingly, Defendant's disqualification of the subject property is upheld. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs have failed to establish that the property identified as Account R587656 qualifies for forestland special assessment under ORS 321.359, for the 2016-17 tax year.  Defendant's disqualification stands.

Dated this ____ day of September 2016.

_____

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on September 15, 2016.*